# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 18-rj-00009-CMA

CHURCHILL MEDICAL SYSTEMS, INC.,

 Plaintiff,

v.

WALKMED INFUSION, LLC,

 Defendant.

_____

**ORDER GRANTING *EX PARTE* MOTION FOR APPOINTMENT OF RECEIVER AND GRANTING RELATED RELIEF**
_____

  Upon consideration of the Plaintiff's *Ex Parte* Motion for Appointment of a Receiver and Related Relief Pursuant to Fed. R. Civ. P. 69(A) and Colo. R. Civ. P. 66 and 69 (the "Motion") (Doc. # 3); and upon good cause being FOUND for the relief requested in the Motion and provided herein; IT IS HEREBY ORDERED that:

1. For the reasons stated in the Motion, the Motion (Doc. # 3) is granted.

2. Cordes & Company, through its principal Edward B. Cordes, is hereby appointed as receiver (the "Receiver") for the purposes of receiving assignment of (i) the "WalkMed" trademark, United States Patent and Trademark Office ("U.S.P.T.O") registration number 2230655, (the "Trademark"); (ii) any and all associated goodwill related to the Trademark (the "Goodwill"); and (iii) any and all books and records (collectively with the Trademark and the Goodwill, the "Receivership Assets") from

Defendant WalkMed Infusion, LLC ("WalkMed"); enforcing all rights of, and in the name of, WalkMed related to the Receivership Assets and otherwise pursuant to his status as Receiver, against any person or entity, including as infringers of the Trademark; conducting sales or other appropriate dispositions of the Receivership Assets; and promptly delivering all net proceeds to Plaintiff Churchill Medical Systems, Inc. ("Churchill") (and only to Churchill) towards satisfaction, in whole or in part, of its monetary judgment registered by this Court on August 10, 2018 (the "Judgment"), see (Doc. # 3-1) against WalkMed (the operation, management and governance of WalkMed, the authority over the Receivership Assets, and all other powers, status, rights and authority of the Receiver described in this Order, the "Receivership").

3. The Receiver serves herein, and discharges all his duties under this Order, as an officer of this Court, solely in a representative capacity, and not in an individual capacity, and does not, in being appointed as Receiver or by acting as Receiver hereunder, thereby become personally liable to any person or governmental entity under any law, statute, rule, regulation, or other doctrine of law or equity. All persons dealing with the Receiver shall look only to the Receivership Assets (subject to the priority, rights and protections of Churchill described herein), and not the Receiver or its officers, directors, employees, or agents, for the satisfaction of all claims against and obligations and liabilities of the Receiver, the business of WalkMed, and the Receivership Assets.

4. The Receiver has the right to obtain, review and analyze all of the past records relating to the Receivership Assets, including without limitation accounting records, disbursements, banking records, sales records and any other books and documents

related the Receivership Assets as necessary to determine whether there are any potential claims or rights against the other persons and entities arising out of the ownership, operation or transfer of the Receivership Assets or otherwise perform the duties of the Receiver. Additionally, the Receiver may solicit the Court for further authorization to expand its review of the books and records related to the Receivership Assets.

5. The Receivership Assets are hereby assigned to the Receiver, together with all rights, prerogatives, title, and interests of WalkMed therein; including all rights to bring, pursue, enforce, collect on and settle any and all claims and causes of or choses in action related to the foregoing, in any court, tribunal or other forum. The Receiver shall have all of the rights, authority and prerogatives set forth in paragraph 6, below, or elsewhere attributed to the Receiver in this Order.

6. The Receiver is hereby granted all powers, status, rights and authority held by receivers dealing with the disposition of debtor assets for the benefit of a creditor and related powers, status, rights and authority, in addition to all powers, status, rights and authority reasonably necessary to accomplish the purposes stated herein, such powers, status, rights and authority to be exercised at any time and from time to time, repeatedly or singly, all in the discretion of the Receiver, and such powers, status, rights and authority shall include, without limitation, the following:

    (i) To receive assignment of the Receivership Assets and, upon assignment, to take exclusive possession, custody, and control over the Receivership Assets

pending liquidation; all rights in the Receivership Assets shall vest in Receiver as of the filing of the Motion;

(ii) To have the status of a subsequent purchaser for valuable consideration without notice with regard to any and all Receivership Assets, enforceable against all persons and entities (and the Receiver shall have such status);

(iii) To have the status of a person who took in good faith for a reasonably equivalent value with regard to any and all Receivership Assets, enforceable against all persons and entities (and the Receiver shall have such status);

(iv) To execute assignment of the Receivership Assets, on behalf of WalkMed, including to or in the name of Receiver;

(v) To enforce any and all legal and equitable rights, titles, interests and prerogatives, whether as WalkMed or otherwise, arising from or related to the Receivership Assets, against any person or entity, including, without limitation, for infringement, and to assert and collect all penalties, damages and other recoveries and to transfer the net proceeds of such collections only to Churchill;

(vi) To market, sell, liquidate, transfer or assign the Receivership Assets, including pursuant to 15 U.S.C. § 1060, and to transfer the net proceeds of any such sale, transfer or assignment only to Churchill; any and all rights, prerogatives, title and interests in the Receivership Assets, and any and all net proceeds derived from the liquidation of the Receivership Assets, shall inure to the exclusive benefit of Churchill until such time as the Judgment has been fully

and finally satisfied and paid in full (including, without limitation, all interest, costs and fees accrued on the Judgment);

(vii)     To institute such legal or equitable actions, suits or other procedures, in any court, tribunal or forum, including any state, federal or other court with jurisdiction, as the Receiver deems necessary or useful to enforce his rights in the Receivership Assets, including any action to prevent or halt infringement and/or otherwise unauthorized use of the Receivership Assets, before and after liquidation, and to collect accounts and debts and enforce contracts and other agreements relating to the Receivership Assets;

(viii)    To hire and retain and otherwise obtain the advice and assistance of such legal counsel, accounting, and other professionals as may be necessary to enable the proper discharge of the duties of the Receivership;

(ix)     To manage, operate, maintain, and otherwise control the Receivership Assets as necessary to prevent diminution of the value of the Receivership Assets;

(x)     To account to this Court for all sums received and expenditures made and file periodic reports to this Court from time to time, not less than every three months;

(xi)     To record all information and to register (and change registration) with the U.S.P.T.O. and any other governmental office or agency, with regard to any and all of the Receivership Assets, in the discretion of the Receiver (though no such registration or change shall be required to make any part of this Order

effective); any registration or change of registration with the U.S.P.T.O. as determined by the Receiver pursuant to this subparagraph (xi) or subparagraph (xii), below, shall be reflected by the Director of the U.S.P.T.O. by appropriate entry upon the records of the U.S.P.T.O., including as set forth in 15 U.S.C. § 1119, as a requirement of this Order, and this Order shall be certified by the Clerk of this Court to such Director, at any and all times as requested by the Receiver, as appropriate to effect such entry upon such records;

(xii)     To perform all tasks required or desirable, in the Receiver's discretion, to maintain the registration status of the Trademark, including obtaining and/or renewing any necessary registration with the Federal Trade Commission, the U.S.P.T.O. and/or any other governmental office or agency;

(xiii)     On a monthly basis, to pay himself reasonable management fees and pay any reasonable Receivership expenses, from any proceeds, and to reasonably set aside funds therefor; initially, the management fee amount for various services proposed to be rendered first must be approved by the Court by separate motion and order to be filed herein within ten (10) days;

(xiv)     To keep all Receivership Assets and all proceeds thereof segregated from, and not to commingle any of the foregoing with any other assets (and the Receiver shall so segregate, and not commingle, the Receivership Assets and their proceeds); provided, however, the Receiver shall be permitted to make payments to Churchill and as described in paragraphs 10 and 11, below;

(xv) To have and exercise all rights and prerogatives to manage and govern WalkMed, as Receiver shall deem necessary or useful for all purposes of the Receivership, including taking or electing to forego any actions as managing member or any other member or any officer of WalkMed; and

(xvi) Generally, to do such other lawful acts as the Receiver reasonably deems necessary or useful for the effective operation, management, governance or disposition of the Receivership Assets and to effectuate the terms of this Order and the Receivership, and to perform such other functions and duties as may be undertaken from time to time as required and authorized by this Court, by the laws of the State of Colorado or by the laws of the United States of America.

7. WalkMed, through an authorized representative, shall, by one or more written instruments, executed by or on behalf of WalkMed, turn over, transfer, and assign any and all of its rights, prerogatives, title and interests in the Receivership Assets to the Receiver within three (3) days of the entry of this Order. Once this assignment is executed, WalkMed, through its counsel or an authorized representative, shall file a notice with the Court certifying that WalkMed has complied with this Order; provided, however, that the Receiver, upon appointment, need not solicit nor wait for WalkMed to effect such turnover, transfer or assignment, and shall have full authority and discretion, immediately effective, to execute on behalf of, sign for, and exercise rights as WalkMed with regard to all Receivership Assets.

8. Retroactive to the filing of the Motion, a perfected lien is hereby placed on the Receivership Assets and their proceeds, for the benefit of Churchill, towards the

satisfaction of the Judgment. Such lien shall have priority over all other liens in and claims against the Receivership Assets and their proceeds as of the date of the Motion. Without limitation of the foregoing, Churchill shall have the rights of a levy by it or on its behalf against all Receivership Assets and their proceeds as of the date of the Motion.

9. Retroactive to the filing of the Motion, WalkMed, its former and current officers, members, agents, and/or any other related or interested person or entity (other than the Receiver and Churchill), are hereby enjoined and prohibited from interfering in any way with the Receiver's control, possession, enforcement, operation, marketing and/or sale of the Receivership Assets, or the effectuation of any of these or any other rights or prerogatives of the Receiver, and such entities or persons are enjoined and prohibited from assigning, transferring, encumbering or otherwise altering the registration or ownership status of, or otherwise interfering with the Receiver with regard to, the Receivership Assets (except as expressly required by this Order); provided, however, that such persons who, immediately prior to the Motion, used the Trademark in business may continue to do so, consistent with normal course activities of the type engaged in immediately prior to the Motion, so long as such activities do not dilute or otherwise compromise the value of, nor alter the title to or rights in, the Trademark (and, provided, however, that all such ability to continue use of the Trademark shall be subject to further order of the Court, any final determination of the rights to the Trademark, and the enforcement of rights by the Receiver in, against and with regard to the Trademark). The foregoing injunction precludes any member or management actions or decisions with regard to WalkMed which could have the effect of making the

Receiver's exercise of any rights or prerogatives of the Receivership more difficult or otherwise limiting the Receiver's authority or power in any respect. Without limiting the foregoing, the foregoing injunction precludes the filing of any petition in bankruptcy by, for or against WalkMed. Any actions taken in violation of the foregoing injunction shall be null, void and of no effect ab initio.

10. The Receiver is directed and empowered to apply revenues and incomes collected by the Receiver first, to the Receiver's compensation; second, to the other costs and expenses of the Receivership, including any reasonable management fees, attorney fees, and other out-of- pocket expenses incurred by the Receiver in connection with the Receivership; and third, to the costs of operating and maintaining the Receivership Assets. The Receiver shall transfer and deliver, promptly, all other amounts only to Churchill, towards satisfaction of the Judgment, including, without limitation, any amounts of interest, costs and fees accrued on the Judgment. The Receiver shall segregate, and not commingle with any other assets, the Receivership Assets and any and all proceeds thereof, until transfer or payment thereof pursuant to this Order.

11. Aside from payment of the compensation, fees, costs and expenses as expressly set forth in the immediately preceding paragraph, the net proceeds from the enforcement and liquidation of the Receivership Assets shall be for the sole benefit of Churchill, and no other party may assert a claim to such funds in whole or in part. Further, immediately after enforcement or liquidation of any Receivership Assets, the Receiver shall calculate the net proceeds and deliver and transfer such funds to

Churchill towards satisfaction of the Judgment, and the Receiver's authority to calculate and transfer and deliver such net proceeds to Churchill shall not require further order from this Court, nor shall the exercise of any other right or discretion of the Receiver hereunder require further order from this Court.

12. Churchill shall be authorized to advance funds to the Receiver for the operation of the Receivership and any other related purpose. The amount and timing of any such advances shall be at the discretion of Churchill and the Receiver. No further Court authorization shall be required. Any funds advanced by Churchill to the Receiver shall benefit from a receiver's lien as against all Receivership Asset and their proceeds to secure repayment of the advances, in addition to all other rights of Churchill pursuant to this Order and the Judgment.

13. The Receiver shall file a bond in the amount of $50,000, conditioned upon the faithful performance of the Receiver's duties and proper accounting relating to the Receivership Assets and further subject to modification by the Court given the amount in controversy.

14. The Receiver shall continue in possession of the Receivership Assets pending liquidation or until further ordered by this Court. The Receiver shall have the right to request the Court to provide other or additional relief.

15. All relief granted by the Court herein shall be effective immediately.

16. Churchill shall serve upon WalkMed a copy this Order pursuant to Colo. Rev. Stat. §§ 7- 90-806 and 7-90-704(2) and Colo. R. Civ. P. 66(d)(3), within five (5) days of the entry of this Order. Such service shall be complete and sufficient for all purposes.

Accordingly, Plaintiff Churchill's *Ex Parte* Motion for Appointment of a Receiver and Related Relief Pursuant (Doc. # 3) is GRANTED.

DATED: October 29, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge